U.S. DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

JAN 0 3 2013

CHRIS R. JOHNSON, Clerk
By
        Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

| | |
|---|---|
| DOUGLAS SHUKERS § <br> & DEBORAH SHUKERS § <br> § <br> vs. § <br> § <br> TRIUMPH AEROSTRUCTURES, LLC, § <br> d/b/a TRIUMPH AEROSTRUCTURES § <br> VOUGHT COMMERCIAL DIVISION § | NO. 13-1002 <br><br> JURY DEMAND |

## PLAINTIFFS' ORIGINAL COMPLAINT

COME NOW Douglas Shukers and Deborah Shukers, ("Shukers" or "Plaintiffs") and respectfully file this original complaint against Triumph Aerostructures, LLC and in support thereof state and show as follows:

### THE PARTIES

1. Plaintiff Douglas Shukers is a resident of, and is domiciled in, Murfreesboro, Arkansas.

2. Plaintiff Deborah Shukers is a resident of, and is domiciled in, Murfreesboro, Arkansas.

3. Plaintiffs allege, on information and belief, that Defendant Triumph Aerostructures, LLC, hereafter referred to as "Triumph" or "defendant" is a Delaware Limited Liability Company with its principle place of business at 1550 Liberty Ridge Drive, Suite 100 in Wayne, Pennsylvania 19087.

4. Upon information and belief, Triumph Aerostructures, LLC was formerly known as Vought Aircraft Industries, Inc. and changed its name to Triumph Aerostructures, LLC when it was acquired by Triumph Group, Inc., but it continues to operate under the assumed name Triumph Areostructures – Vought Commercial Division.

5. Upon information and belief, Defendant Triumph Aerostructures, LLC engages in the manufacture and supply of aerostructures for commercial, military, and business jet aircraft worldwide. The company offers fuselages, wings, empennages, nacelles, and helicopter cabins to aerospace original equipment manufacturers. It also provides design, testing, manufacturing, and support services.

6. Upon information and belief, Defendant Triumph Aerostructures may be served with service of process through its Registered Agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction over this dispute pursuant to 28 USC § 1332 because there is complete diversity among the parties and the amount in dispute exceeds $75,000 excluding interests and costs.

8. The Court has personal jurisdiction over defendant because it regularly conducts business within this judicial district, has continuous and systematic business contacts with the State of Arkansas, and has purposefully availed itself of the privilege of doing business in the State of Arkansas.

9. The Court has personal jurisdiction over defendant because this lawsuit arises out of and relates to defendant's contacts with the State of Arkansas. Defendant hired an Arkansas company, Frank Thompson Transport, Inc., to deliver sulfuric acid needed by defendant. Plaintiff Douglas Shukers was delivering the sulfuric acid defendant ordered when he was injured. Defendant purposely availed itself of the benefits of the forum state and could have reasonably anticipated being brought into court in Arkansas to answer for litigation arising out of its contacts with the state. The Court's exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

10. Venue is proper in this judicial district pursuant to 28 USC § 1391 because a substantial part of the events giving rise to the claims stated herein occurred in this judicial district.

## FACTS

11. On or about January 21, 2011, Defendant contacted Frank Thompson Transport, Inc. in El Dorado, Arkansas to arrange for a delivery of sulfuric acid from Shreveport, Louisiana to its business location at 9314 West Jefferson Boulevard in Dallas, Texas 95211.

12. Frank Thompson Transport assigned plaintiff Douglas Shukers to deliver defendant's sulfuric acid.

13. Plaintiff arrived at the Triumph facility around 3:30 p.m. and was admitted by security. A supervisor who, upon information and belief, was working for defendant was on site to assist with the delivery. The supervisor directed plaintiff to a storage tank into which he was to deliver a partial load of the sulfuric acid. After having safely delivering approximately 300 gallons of sulfuric acid into the first tank, plaintiff was instructed to deliver the remaining sulfuric acid into a second tank. The supervisor directed plaintiff to the second tank and physically indicated the location where plaintiff should attach the hose.

14. Plaintiff attached his equipment to the second tank. The valve to which plaintiff connected his hose was very old and lacked the appropriate protective cover to protect it from the elements.

15. After plaintiff connected his hose, the supervisor opened the valve and plaintiff began pumping the sulfuric acid. Plaintiff was not permitted to touch the valve. Soon after pumping began, the supervisor left the area.

16. The delivery of the sulfuric acid into the second tank was significantly slower than it had been with respect to the first tank. The Triumph supervisor returned two times to see "what was taking so long." Plaintiff explained that, for some reason, it was taking longer to pump the acid into the second tank. When plaintiff expressed his concerns about a problem with Triumph's system creating the slow down, the supervisor left the area again.

17. After over an hour of pumping, plaintiff walked over to where the hose was connected to the pipe with the intention of checking the pressure gauges to see how much time remained. At that moment, Triumph's valve and/or delivery system malfunctioned and released

3

a steady stream of pressurized sulfuric acid. The stream of acid hit plaintiff in the chest with such force that he was knocked back and the acid went under his protective helmet. Acid further spread down underneath his shirt and burned forty percent of his body.

18. Although OSHA regulations require that there be an emergency pull shower close enough for immediate use, along with a sign clearly indicating the location of the emergency shower, there was no emergency pull shower in the vicinity.

19. Plaintiff wandered into a nearby building where he found a worker sweeping. He asked her where the shower was, but she did not speak English and could not assist him. Plaintiff then found containers filled with drinking water, which he used to douse himself.

20. Plaintiff was hospitalized for months and underwent multiple painful surgeries as a result of the incident. He has permanent scars covering forty percent of his body. He is blind in his left eye. He has no hope of ever regaining vision in this eye.

## CAUSES OF ACTION

### *Negligence*

21. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-20 of this Complaint as though fully set forth herein.

22. At all times relevant to this Complaint, Triumph owed plaintiff Douglas Shukers a duty of reasonable care with regard to the maintenance, repair, and overall working condition of the delivery system located on the second tank, including the valve.

23. Care and maintenance of the delivery system of the second tank, including the valve, was the sole responsibility of Triumph.

24. Triumph failed to exercise reasonable care in the maintenance, repair, and overall working condition of the subject tank's delivery system though it knew, or reasonably should have known, that the components and/or systems were defective, unreasonably dangerous and not fit for the intended and foreseeable use.

25. The valve located on the second tank was very old. The valve lacked a protective plate and had deteriorated substantially over its life time and was unreasonably dangerous.

4

26. Triumph failed to exercise reasonable care in failing to adhere to OHSA standards, which required that an emergency shower be immediately available to plaintiff, and that a sign be erected to clearly show the location of the shower. OSHA Regulation 29 CFR 1910.151(c) states, "where the eyes or body of any person may be exposed to injurious corrosive materials, suitable facilities for quick drenching or flushing of the eyes and body shall be provided within the work area for immediate use." An industry standard approved by the American National Standards Institute (ANSI) further defines this regulation. It states that an emergency shower must take no more than 10 seconds to reach and the path to the fixture must not be hindered with obstructions. The standard also states that the emergency equipment must have a highly visible sign to allow an injured person to quickly locate it. On the date of Shukers's injury, there was no sign to indicate the presence of an emergency shower nor was there an emergency shower available to him for immediate use.

27. Triumph failed to exercise reasonable care in the operation of the valve. Upon information and belief the Triumph supervisor, who was responsible for operating the value on the second tank, failed to operate the valve in a safe manner. Defendant is responsible for the negligence of its supervisor/employee through the doctrine of respondeat superior and other doctrines of employer/employee agency.

28. Triumph's failure to exercise reasonable care as set forth in the preceding paragraphs proximately caused the pressurized sulfuric acid to be released, thereby causing plaintiff to suffer the injuries and damages complained of herein.

### *Premises Liability*

29. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-28 of this Complaint as though fully set forth herein.

30. Plaintiff Douglas Shukers was an invitee upon defendant's premises at 9314 W. Jefferson Blvd, Dallas, Texas, and as such defendant owed him a duty to use ordinary care to maintain the premises in a reasonably safe condition and to protect plaintiff from damages resulting from a structure on its land.

31. Defendant knew or should have known that the delivery system of the second tank, its supervisors, lack of reasonable care, and the lack of an emergency shower posed an unreasonable danger to plaintiff. Defendant failed to eliminate these dangers or otherwise protect plaintiff, breaching its duty of care to plaintiff.

32. As a proximate cause of defendant's violation of its duty to care to plaintiff, he sustained serious injuries.

### *Absolute Liability for Ultrahazardous Activities*

33. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-32 of this Complaint as though fully set forth herein.

34. Sulfuric acid is a highly hazardous chemical, toxin, or reactive according to the Occupational Safety and Health Administration of the United States Department of Labor.

35. By and through its use of sulfuric acid, defendant is absolutely liable for the compensatory damages sustained by plaintiff, which were proximately caused by defendant's use of sulfuric acid.

### *Loss of Consortium*

36. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-35 of this Complaint as though fully set forth herein.

37. The above acts of negligence and the injuries that followed caused Plaintiff Deborah Shukers to lose the consortium, conjugal fellowship, and household services of her husband.

### DAMAGES

38. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-37 of this Complaint as though fully set forth herein.

39. As a result of the negligence and absolute negligence of Defendant Triumph, Plaintiffs have been damaged in an amount in excess of $75,000.00 based upon but not limited to the following:

a. Physical pain, suffering and mental anguish in the past and future;

b. Scars, disfigurement and visible results of the injury in the past and future;

c. Physical impairment in the past and future;

d. Medical expenses in the past and future;

e. Loss of earnings in the past and future;

f. Loss to future earning capacity;

g. Loss of household services in the past and future; and

h. Loss of companionship, services, and the marital relationship for Plaintiff Deborah Shukers.

## PRAYER

Wherefore, Plaintiffs pray that Defendant Triumph be cited to appear and answer herein, that this action be set for trial by jury, and that Plaintiffs recover a judgment from defendant Triumph for their damages, prejudgment and post-judgment interest beginning January 21, 2011, costs of suit, attorney fees and such other relief the Court deems proper.

Respectfully submitted,

*Nicholas H. Patton*
Nicholas H. Patton
Patton Tidwell & Schroeder, LLP
4605 Texas Boulevard
Post Office Box 5398
Texarkana, Texas 75505-5398
(903) 792-7080
(903) 792-8233 (fax)

ATTORNEY FOR PLAINTIFF

7